The opinion of the court was delivered by

Mr. Justice Colcock.

The doctrine of law on this subject is well settled and admits of no doubt. Where the acceptor of a bill or the maker of a note, becomes insolvent or offers to compound his debts, the holder of a bill or note who accepts such composition and discharges the the acceptor or maker, thereby discharges the posterior parties, unless they have previously consented to his executing the composition deed. 1 Bacon, 422, title Bankrupt: Chitty on Bills, (American edition) p. 383-4-5.
*249 What is the irresistable conclusion from this language, ■“unless they have previously consented”, that where they do .consent, they are not discharged: and this follows not only from the language of the law, but from the reason on which the law is founded. Why is it that a discharge of the maker is a discharge of the endorser? Because the recourse of the endorser to the maker is thereby destroyed, and no one can deprive another of his rights without his consent; but he may give them up if heplease. If the endorser finds that the maker will never be able to pay the whole debt and he is thereby jeopardized, it is to his advantage that the debt be diminished, and he is thus led to consent; and it is certainly not less absurd to say that a man may not surrender his his rights, than to say he shall be deprived of them against will.
But it is said the rule is not of universal application; and to shew this, the case ex parte Wilson, from 11 Vesey Jun. 110, is relied on. 'On an examination of the case, I am satisfied that so far from impugning the general doctrine, the chancellor in his decision expressly recognizes it, dissenting, however, from a distinction of Lord Thurlow’s, as to the acceptor’s or drawer’s having effects; a distinction which if well founded would exclude the case before us. In the first place, the parties in that case were all acting under a mistaken view of the situation of the acceptor; they all supposed him a bankrupt. In that case, the-acceptor in Hamburg failed and., as was supposed, became -a bankrupt; afterwards the drawer became bankrupt, the bills having been previously protested. The holder applied for a dividend of the drawer’s effects, but the assignees of the drawer said, “ no, you must first apply to the acceptor’s funds; receive your dividend and then we will let you in for a dividend of the drawer’s effects.” The holder sent to Hamburg, and without enquiring into the tacts, received by his agent a portion of the acceptor’s effects, and this agent signed a composition deed. When the fact was disclosed and the holder applied for his. dividend of the drawer’s effects, he was resisted upon the general doctrine, the application of which he attempted to retort by saying, “ you sent me to receive the money;” She answer to this, however, was conclusive as to the law, “we *250 did not consent to his discharge; Aye sent you to receive the dividend of a bankrupt’s estate, who is by law discharged; you should have looked into the facts;” so that the law turned on the Avant of consent.
It is further urged in behalf of the defendants, that the facts of the case will warrant the belief that it was the contract of the parties that the defendants should be released, as Avell as Mof-fett, and this it is said is apparent from the language of William Hall to the bank; “ if you persist in your suit, you will only embarrass me and receive no benefit yourselves, for the assets of George Hall & Co. Avill not pay their own debts.” In order to give construction to these words, lei us look to the facts. The note had been regularly protested; all the parties sued, and William Hall held to bail. The amount of Moffett’s debts were about $25,000, and *he assets $24,000. The deed of Moffett was signed by about thirty creditors; the deficiency contemplated was about $1,000, Avliieh divided among thirty creditors would make the loss of each a little more than thirty dollars. In tlie first place then, it is not unreasonable to suppose that Hall did not regard so trifling a balance; but if his object had been to be discharged, can it be believed that he would have failed to say so expressly; his letter then is only a proposition. Suppose, however, that Hall really intended that he should be discharged; does it follow that the bank agreed to this part of his arrangement. Do not the circumstances of the case show beyond all doubt, that they did not. Why was not the note given up? Why were not Flail’s bail released from their bond? Does a man pay a debt and leave tlie evidence of the debt in the hands of his creditor? Does he suffer his friend to remain bound, when he has discharged his liability? This is utterly inconsistent with the conduct of á man of business. Again, suppose it Avas Hall’s intention to be released, why should the bank comply with this part of his requisition? What was the consideration which was to induce them to release him? Not the money received from Moffett; for if they had intended to discharge Hall, they could have taken the dividend of Moffett’^ assets without the leave of Hall.
King, for motion.
Lance, contra.
On the last ground, it is only necessary to point to that clear distinction laid down by the law, between those acts which a co-partner may do after the dissolution of the copartnership, and those which he cannot do. After the dissolution of a copart-nership, one copartner cannot create any new liability, but he may keep alive an old one; one copartner may, after the dissolution of the copartnership, revive a debt barred by the statute, Simpson & Morrison, ads. Geddes, 2 Bay, 533. Here no new liability has been created, but an act done which lessens the liability which did exist. Where an act is done for the benefit of one, his assent is implied. But there is one fact in the case which to my mind is conclusive on this point. On the failure of George Hall ap¿Co. they assigned their effects-to Kiddle and M‘Neill & Co. who may then be considered as ' their agents, for the purpose of collecting and paying their debts; and they as assignees of George Hall, & Co. (so expressly styling themselves) sign the discharge of Moffett; what ground of complaint then can George Hall have?
The motion is discharged. —
Bay, Gantt, &/■ Johnson Justices, concurred.